The first case of the morning, call 209-1233, Buhuriak v. Bill Kay Chrysler Plymouth, on behalf of the Avalon, Mr. Stuart Gordon, on behalf of the athlete, Mr. William Huddle. Mr. Gordon? May it please the Court, good morning. I represent Bill Kay Chrysler Plymouth in this 10-year-old matter. This case, in brief, arises from a 2000 transaction where Mr. Buhuriak traded in a BMW and signed documents to purchase a brand new Sebring. As you know, this is the second time this case has been before this Court. And while I know that you've read the record and probably both of the previous opinions, I think it's important for me to emphasize that when this Court issued its first opinion in this case... Excuse me, counsel, could you keep your voice up, please? I'm having trouble hearing because of the fan on this. Sure, I'll... Maybe adjust the microphone so it's pointed up a little more. Okay. Thank you. And it does say speak up in big letters here, which I ignored. I apologize for the interruption. No, that's all right. I appreciate your interrupting me because of all I talked about. I can't hear you. It's important for me, I think, to point out that in your first opinion, in this Court's first opinion, there was a checklist of things for the trial court to review on remand in considering the enforceability of an arbitration agreement. And those four things were contained in one paragraph. Was there a condition preceding? Was it met? Was the arbitration agreement independent of a purchase contract? And was there a waiver of the condition preceding by the retention of the vehicle? When we filed a petition for rehearing, while the petition was not granted, a modified opinion was issued by the Court, and that entire paragraph was excised from the opinion, and the case was remanded for determination of whether or not there was an arbitration agreement. When we went back to the lower court, instead of addressing that issue, we wound up having a hearing before an answer was filed, before there was any discovery, about a hearing on what was really the ultimate issue, as it turned out, as to whether or not there was a condition preceding to a purchase contract. Well, just out of curiosity, Counsel, how would you separate the two? If your argument is whether or not there was a valid contract to arbitrate, if there was no contract to begin with, if arguably the condition preceding was not met, what would you be arbitrating? Well, the point is that that issue is for an arbitrator. We have two contracts here. We have a contract to purchase, and we have a separate arbitration agreement. Well, how can you, though? See, that's my question I'd like you to answer. If you have no contract to purchase, to follow that, what are you arbitrating? Can you answer that? What are you arbitrating? You're arbitrating whether or not you have a contract to purchase, and that is for the arbitrator. So you're saying this Court's remand did not cover the trial court determining whether or not there was a condition preceding? It could not, as a matter of federal law, as established by the United States Supreme Court. But wasn't there a paragraph following the paragraph you were referring to, certainly in your briefing just now, that really did include direction to address that issue? I mean, it's the paragraph that starts, the parties have made various arguments as to the existence of an agreement to arbitrate Charles's claims. For example, plaintiff's claim, Pamela's approval of the amount of the trade-in allowance, et cetera, and her agreement to trade in the BMW were conditions preceding to the formation of the contract to purchase. And then the opinion goes on, and it says at the very end of that paragraph, these and any other arguments as to the existence of an agreement to arbitrate should be addressed to the trial court on remand. So that opinion certainly does encompass, does it not, the question of condition preceding? Addressing, Your Honor, respectfully, is different from ruling upon it. I think it's important for us to keep in mind that... Can you explain the difference, please? Yes. Until the Appellee's brief was filed in the first appeal, there was never a mention of the condition preceding. The only issue before the trial court, or the court below, when it denied the first, when it denied the motion to compel arbitration initially, was whether or not this particular dispute was exempted from arbitration. It had never been raised until one sentence in the Appellee's brief. So I believe when the court's, the Second District's opinion was issued, it was, yes, you have to address this, but the proper way to address it is to say, this is for an arbitrator. And that takes us... Well, but the decision in Bureak 1 was made, was to remand, and then the trial court made that decision, correct? The trial court made which decision, Your Honor? The decision about condition preceding. Oh, it did. The trial court definitely made the decision as to the condition preceding by going through the checklist that was excised from this court's opinion, which... So you don't think what the court did was consistent with the second paragraph that I referred to? I didn't read the whole thing, but do you know what I'm referring to? Oh, I absolutely do. I think that what the trial court did was inconsistent with the established law. The trial court could have decided whether or not there was a condition preceding to the arbitration agreement, but not to the separate purchase contract. Otherwise, what's the sense of having an arbitration agreement if the court's going to decide the issue that's supposed to be arbitrated? So are you saying by putting the arbitration agreement separately, which I assume is a trend in the industry now, the arbitration industry, because putting them inside contracts caused questions of whether they were seen, whether they were enforceable, whether they were unconscionable. By putting it separate and notoriously, you not only, or the industry not only says that you arbitrate the issue of whether there is a contract at all, as opposed to a court determining whether there is a contract? I don't want to toot my own horn here, but I think I was probably the first lawyer in Illinois representing a car dealer to draft an arbitration agreement. And frankly, I didn't even think of that when I did it. It was a separate document. Purchase contracts are so big as it is that I thought it was important to have another document. As the case law has developed, it makes it easier, I think, to enforce the arbitration agreement, particularly an arbitration agreement such as this where it says that it survives the termination of a separate purchase contract. Okay, that makes legal as well as logical sense. But again, I think the issue we might be struggling with is a stand-alone arbitration agreement, how does that exist? How do you have an arbitration agreement to arbitrate what? We're dancing around the issue. Are you saying it's for an arbitrator to decide if there was ever a contract in the first place? Absolutely. And was that issue raised in the first appeal? No. Okay. The issue in the first appeal was whether or not the trial court had acted incorrectly by determining whether or not this particular transaction was exempt from the arbitration agreement. As the second district's first opinion, both versions held, that's called the question of arbitrability. And not only the arbitration agreement, but this courts and federal courts have said arbitrability is for the arbitrator, particularly when it is established in the arbitration agreement that the arbitrator decides arbitrability. So that was really the only issue that was raised in the first appeal because the court below had limited its opinion to one sentence saying there's no arbitration because it's exempted. Now, it hasn't been an issue in this case, but arbitration agreements in Illinois are considered to be separate documents supported by separate consideration. The separate consideration being the mutual agreement to arbitrate. So even if the underlying contract is ultimately determined to fail, or even if it's alleged to fail, the separate arbitration agreement, which is supported by the mutual consideration, requires that determination to be made by an arbitrator. I was following up on that. So where did this case go off the track, so to speak? Was it the problem on the remand wasn't clear? The trial court took it upon itself to ignore the remand? How come this issue hasn't been raised about this should simply be in the hands of an arbitrator and the court shouldn't be dealing with it? I raised it at the hearing on remand, but the court below went through the check, the four-point checklist, and when you say take it upon itself, that's possible, but I'm willing to suggest that because mistakenly the first opinion that was modified was attached to the mandate in the appellate court record. When I received the appellate court record, that was the first time I noticed that. I said, well, this explains why we've been going around and around for five years, because the wrong opinion was attached first to the mandate, and the court below obviously read that one and never got to the second one. So what specifically are you asking this court to do? I think the judgment for damages and the judgment for attorney's fees should be reversed, and the order denying the motion to compel arbitration should be reversed, and the case should be remanded for the entry of an order compelling the arbitration of this case. If we were to agree with you on the damages and on the attorney's fees, is there a point then for remand? No, I suppose not, other than it would be nice to get the law established on behalf of car dealers, but no. In this particular case, no. So you don't read the first opinion as holding that the issue of a condition precedence was for the court to decide rather than an arbitrator? And therefore, I mean, if one reads it that way, then it's law of the case, right? Well, I don't know that it's law of the case. I think that telling the trial court to address something because it's been raised doesn't mean that that court could not have erred in actually making the condition preceding the termination. I think that the court below could have made a decision, the termination as to whether or not there was a condition preceding to the separate arbitration agreement. And that's what I said to the court below when we had that hearing. If the condition preceding the argument relates just to the arbitration agreement, you can make that decision. But ultimately, the court below, without any discovery, without an answer being filed, and without even a complaint being filed alleging a failure of a condition preceding, went ahead and decided the whole case on remand. And that's where we went, I believe, in Justice Hudson's word, off the track. All right, well, then, if the issue is arbitrability, well, at least that's what you say it is, where do the cases of Granite Rock, Renishetter, and recently, well, not recently, but that Spear-Drake Insurance Limited fit? Where each of those, the two Supreme Court cases and the Seventh District Easterbrook said, the determination of whether there is a contract is first, and that should be done by a judge. The question, respectfully, is not arbitrability. This court has determined that arbitrability is for the arbitrator. And those cases didn't deal with separate arbitration agreements, and they didn't deal with the situation we have here, where the – But they dealt with whether or not there was a contract that could be subject to arbitration, as I read them. And that's what the second paragraph, if not the first paragraph, that's at issue here in the first opinion, talk about, whether there is a contract. Whether there's an agreement to arbitrate. Well, we – there's a signed agreement to arbitrate. We're not going to dispute that. But it relates to a contract that was signed afterwards, and therefore, is that – is there a contract? Why – well, maybe it does and maybe it doesn't. But that's the ultimate issue, that the parties agree to submit it to the arbitrator. The parties agree. Mr. Breuer had signed a document saying that even if that contract is terminated, this thing that I signed to buy a car, which I paid for and took home, put all my stuff – took all my stuff from my BMW and put it in the new Sebring and took it home. He signed that agreement saying that if that contract is terminated and we have a dispute, I'm going to submit it to arbitration. But if he also said – and this is a – there's a dispute as to this – if, you know, my wife has to deal with this and she has to put her name on this or we don't – you know, I won't live in a happy home. I have to have her approval. Would that not also apply? If it doesn't apply, I guess you're saying it doesn't apply to anything, including the separate petition – or the contract to arbitrate. No, I'm not saying it doesn't apply to anything. I think that that's the reason that they get to make their claim, because that's the dispute. But I'm saying that the parties agree that that would be submitted to an arbitrator. Well, one – let's see, there are three parties here, a car dealer, a husband, and a wife. Two of the three agree. What is it, the majority rules? Or does everybody have to agree? I don't know how things are in the Behuriak household. Now, be careful while you're on the record. I was going to say that the majority doesn't necessarily require ruling in my household, and it's Mrs. Behuriak's car. But putting that aside for the moment, we didn't argue that Mrs. Behuriak was required to arbitrate her disputes. We argued that Mr. Behuriak was because he signed the arbitration agreement where he agreed all disputes. And whether or not the dispute is covered under the arbitration agreement is a question of arbitrability. And the law of the case, according to the first opinion, both versions issued by the Second District back in 2003, said the parties agreed that arbitrability means – in this case, means that the arbitrator will decide the issues. And the issue of condition proceeding to the separate purchase contract, then, goes to the arbitrator. But that's not what you argued to the trial court on remand. In fact, the record reflects, does it not, that you stated a number of times that you were there to argue or the court was to determine whether or not there was a condition preceding to the arbitration agreement. To the arbitration agreement, not to the underlying contract. If they wanted to argue there's a condition preceding to the arbitration agreement, okay, fair enough. But they didn't argue that. They argued that there was a condition preceding to the underlying contract. There was no defense to the arbitration agreement on remand. Mr. Berhoriak said, I signed it. Nobody disputed that. And it says what it says. It says all disputes and arbitrability goes to the arbitrator. And the four Supreme Court cases that we've cited, starting with Prima Paint, which has been followed by this court and other decisions, those four decisions all say defenses or attacks on the underlying contract, even contracts that have an arbitration clause, go to the arbitrator. Our case is so much stronger because it's a separate arbitration agreement. It's supported by separate consideration. And it's really a standalone document. And what was the consideration for the agreement, the arbitration agreement? A mutual agreement to arbitrate. And this court, I believe, in the Rainey versus another Bill Case case that I handled, but not against Mr. Hull, but I believe the Rainey case, well, that could be wrong. There's a number of cases from this court and from the first district that have said that separate arbitration agreements are supported by consideration, and that's the mutual agreement to arbitrate. That's why it hasn't been raised in this case. It's not on issue. Well, so what happens if Mr. Mihuriak has to go to arbitration, but you still have Mrs. Mihuriak with the car? What are you going to do, replenish it from her? No, it's paid for. Well, then why are we here? I mean, if we don't have a resolution for you. Well, she's already lost and she didn't appeal. Mrs. Mihuriak lost her case in the trial court. The court below found that they hadn't established any damages and she hadn't proven any harm to herself or any violation of the Consumer Fraud Act. So the court below ruled in favor of Bill K and against Mrs. Mihuriak. Even as to the agreement to arbitrate? She didn't sign it, so we didn't allege that she had to arbitrate it. So we tried the case against her and won it. What's left is the lower court's judgment in favor of Mr. Mihuriak, which we contend should have been submitted to arbitration and still should be. What happens to the car? The Mihuriaks still have it and still drive it. I heard a beeping, so I assume my time is up. Not surprisingly, I will rely on my brief for the rest of the argument. Thank you. Mr. Huddle. Thank you. Please support. This is the arbitration agreement that Mr. Gordon was alluding to. And you'll see on the left-hand column, Mr. Mihuriak's signature appears there. And then to the right of Mr. Mihuriak's signature, there's a line and it's blank. That's where the signature of Pam Mihuriak should have been for there to be a valid arbitration agreement. But it just says buyer. It doesn't say Ann Mihuriak, does it? Or Pamela Mihuriak or whatever. It's a form contract. No question, Your Honor. But it is signed by Bill Kaye and Judge Charles. And Charles' testimony in his complaint, which I drafted, you'll see the first thing that's in this case, filed April 4th, 2001, is a complaint, which I checked it again this morning, signed by myself in 2001. And in that complaint in paragraph 2, it alleges that plaintiff did not, Charles Mihuriak, did not consent or authorize the dealer to sign Pam Mihuriak's name on anything. And the transaction was not final and contingent until Pam came back to the dealership and agreed to the trade-in of the BMW. And that evidence was presented in the form of Charles' testimony or what evidence? It was also presented in the form of Pam's testimony. She said an important fact, and I understand why Mr. Gordon kind of danced around them, as Your Honor indicated. She never signed it. She never came to the dealership. She never called and consented to the transfer of her BMW. And it's undisputed that the car was sold. She was on the title. And Bill Kaye sold the car without her signature. That's a fraud. And that's what Judge Wheaton found. That is a consumer fraud under the law. Now, the issue as to whether or not she followed the first opinion or the modified opinion, and I know Mr. Gordon spent quite a bit of time talking about that, but we still have danced around the issue of Pam Mihuriak did not consent to the arbitration agreement or the agreement as a whole. Let's look at the arbitration agreement, which is where Mr. Gordon wants to focus. And we see that under the Illinois cases and under the federal cases, the court has the right to decide if there's an arbitration agreement. That's the fundamental issue. We can't elevate arbitration agreements to a special type of contract that's indianized from judicial challenge. And that's what the parties that foster arbitration agreements want to do. In Justice Fortas' initial opinion that started this whole trend, the prime of pain case that Mr. Gordon alluded to, he wrote, and I'm going to just, without reading the long portion of this, and I know you don't favor hearing readings, but The claim is brought in the inducement of the arbitration clause itself. It goes to the making of the agreement to arbitrate. The federal court may proceed to adjudicate this. The court then goes on to say that to indianize an arbitration agreement from judicial challenge would be to elevate it over other forms of contract inconsistent with the saving clause in Section 4. So if I can come off the essence of your argument, you're saying whether or not there was a valid agreement to arbitrate is not beyond the reach of the court. The court should be determining that. And in light of your other argument, you're saying, well, if there's no valid contract to begin with, what are we arbitrating? Exactly. It really becomes a metaphysical argument. Your Honor, as Justice Hudson has said, we can't just debate how many angels can dance on the head of a pin. We could come up with the idea that it's three, but that doesn't make it so. What are we going to arbitrate if there is no contract? All right. I think we understand that point. There's some other, I think, critical issues here we need to address. All right. What are you maintaining was the measure of damages in this case? Quite frankly, the judge, Judge Wheaton, I thought correctly found the measure of damages in this case was the value of the contract, and that's what the court ruled. I'm not clear. Value of the contract, what does that mean? In this case, there was a contract, and although we argue that the condition preceding the fail adds to it, the total amount is the price of the car, which included the amounts that Charles paid to the net balance, plus the $14,000 for the BMW. The BMW was sold to another company in Minnesota by Bill Kaye. Never had her signature on the title. They received monies, which was actually $16,000, which the judge found based on the documents that were introduced into evidence. And then Mr. Breviriac paid an additional amount of cash to close the deal at the time, which was $10,000 and some odd dollars. Didn't the trial court specifically find that there was no proof as to the value of the BMW? Yes. Well, then how do we attribute a value to the BMW that's not in the record? We attribute the value, and this court takes this de novo, as your honors know, by the trade-in allowance that Bill Kaye itself gave to the BMW. It was always the position of the Breviriacs from Charles that it was worth more. That's why he went back on Monday. This deal went down on a Saturday, October 20th, 2000. On Monday, October 22nd, he was back there trying to get it back because his wife said, what do you mean you traded it in for $14,000? It's worth a lot more. Go and get that car back. Well, here's the concern. The trial court found that you failed to prove the value of the BMW. Did it not? It found that there was no credible evidence as to valuation evidence. However, Bill Kaye is a car dealership that is qualified to make those values. It sells cars, and it's a merchant of cars. So you're saying the trial court was wrong? I mean, don't we have to rely on the trial court's ruling? The trial court's telling us there was no proof of the value of the BMW. So do we say, aha, well, Bill Kaye must know what it's worth. How do we do that? Well, what we do is we say that the court found there was credible evidence by Charles Breviriac. In fact, the court found that Charles' testimony was credible, and the evidence presented by the witnesses for Bill Kaye, respectfully, Judge, was not credible. But the court didn't find that there was a value proven to the BMW. If the court says the opposite, then that's what we're going by, right? I understand that. But what I'm saying is the entire package the court found to be relevant. While there wasn't specific testimony regarding the BMW as to its value, and apparently nobody sought to do that, the court found the entire value of the contract, that is the transaction of what the Breviriacs paid, was the value of the damages. And under the Robocert case, if I might, I brought it out because I thought this question might come up. Can I grab it? Sure. The court at 78 S. 3rd 266 found that the measure of damages is the entire amount that was put out, expended by the plaintiff in reliance on the fraudulent activity. But that amounts really, doesn't it, to a revocation of the contract? I mean, isn't that what this damage award that she concluded would be appropriate is? It really amounts to a revocation of the contract. It does, Your Honor, and I don't want to dance around it. And how is that consistent, I mean, with the finding of there was no contract? Well, I think it's a, if you will, it's a returning of all funds that were paid. It's in essence an unjust enrichment to the dealer that they received all of this money when there was no deal. They defrauded the Breviriacs and sold and went ahead with the deal when there was no deal, and they kept their money. So whether we call it a rescission or a revocation or we call it an unjust enrichment, the court can fashion this on appeal as the court feels the remedy is proper. But I believe Judge Wheaton's ruling was correct. On the RoboServe case, they're entitled to all the monies they paid back, and that's what the court rules on. So in essence it sounds like a rescission or revocation because the parties are in essence put back in the position they would have been to the extent that they could be had the transaction never taken place. Exactly, Your Honor. I agree with that, and I think that's what the judge was doing in equity. She sits in equity in DuPage County. She's the head of the Chancery Division there in DuPage. And I think what she did is she said there's no contract, the condition preceded and failed, all the monies go back to the Breviriacs, period. If everybody's put back in the position they were before the transaction took place, what then is the actual damage that then you can tie into a consumer fraud count? What I tie into it is under the RoboServe case is what monies they put out of pocket, and that is the entire package. We could argue that you could break it down different ways as to the financial damage that they sustained, but it's the monies that got paid by Charles, and he didn't get back when he came back two days later and said my wife's not coming in to sign this contract. There is no contract. Give me the car back. This deal is over. And so whatever he paid, she found, is his damage. But he got it back then at the end, right? No, no. He never got any money back. And Bill Kay has never paid a single penny to the Breviriacs in reliance on their demand to get the money back. They tendered, they offered to give the car back. They never got a dime back, not a cent. So what are you saying are the actual damages here? I mean, the only thing that can be awarded are actual damages, right? The actual damages are the amounts that... Not aggravation or inconvenience, but actual damages. That's correct. The court definitely found that she was not going to award aggravation and inconvenience, and I wouldn't argue anything to the contract. She ruled they are $26,546.50, and that is in zip pay, which is the amount that the Breviriacs had to pay in total for this contract that never existed. The dealership never should have kept that money. She ruled giving the money back, they give the car back. This deal is over. Right, that's the out-the-door price. Right. All the money they paid for the car is back to them. Right. Okay. We're out the door. So what was their actual loss? What was their damage? That's it right there. They're out-the-door price they paid. They didn't want the car. But they drove the car for years, right? They didn't want to drive the car. They returned the car the very next day the dealership was open. They returned the car. That was something that can't be laid at their door. The dealership decided they're not going to take the car back. I thought when he walked in two days later, he said, I want my BMW back. He wasn't saying, I'll give you back your Sebring at that point. The moment that we filed a complaint, we asked for a rescission in kind of a lump. That was a little later than that, two days later. When he walked in on the Monday, he said, I want my BMW back. I'll pay you $14,000. That's true, Your Honor. Okay. And then they negotiated for a while and came up with, well, we'll give you $1,000 for your trouble. Oh, we'll give you $2,000 because then that makes up the difference of the taxes you paid. And the return of the Sebring never was an issue until the suit came about, wasn't it? It became an issue when Mr. Laird sent them a letter. But it certainly was an issue as of April 4, 2001. And Count Warren, that I wrote, said rescission and cancellation. And the prayer for relief was, give us our money back. We will give you the car. So about five months later. About five months later. And if the court rules as a matter of law that it was too late, Mr. Gordon has a good argument. But I don't think it is. Is there a value now, a different value to the Sebring than its original value since you've had it for five months? I'm sure that at the point of five months, it was a slight diminishment in value. Well, it was a used car when it walked out the door. Sure. So we all know that it gets reduced 20% when you walk out the door. And, of course, the court is well advised that after five years, after ten years now, the car is almost virtually worthless. But that's not something that I should think is laid on the door of the plaintiffs. The unjust enrichment is to the dealership that retains the money based on fraud. And they go and sell the BMW at a profit. The next day, it's gone off to Minnesota. So there, I think, is where we look at the fact that damages are warranted. The dealership can't retain all of its unjust gains. And that's something else that I think the court can sustain, Judge Wheaton's opinion, her ruling. Well, I mean, maybe their unjust gain is $2,000, not $27,000. It may be that the court finds that's true, but it is damage. It is something that they shouldn't be entitled to hold on to. And that's what our argument is and always has been. The Borreliacs were damaged. We all know that they didn't give their car back because they got to sell it for more the next day. And that's where damages occur. And to allow them to retain that ill-begotten gain when they have a title under Illinois law, the Motor Vehicle Code is clear that a certificate of title can't be transferred without the signatures of all the title holders. Bill Kaye did exactly that in violation of the law. That's a consumer fraud. They should be penalized for that in order to return any monies they made. So, Your Honors, I understand respectfully the court's concerns about how the measure was, you know, obtained. But I would ask you to fashion the remedy as the court sees fit. Whether the case has to go for another trial after 10 years, I would agree with Mr. Gordon. I think it becomes a little bit sad when we're looking at arbitration. It is supposed to be expediting resolutions of disputes. And this one, by no means, has it expedited anything. Thank you. Mr. Gordon. Thank you. I always know when I have cases with Bill that I'll find pieces of paper. That may be important. You can look at them now. It was part of his argument and I didn't think it was all that important. Okay. Can you do one thing in the course of your brief rebuttal? Can you address the argument there was no proof of actual damages and how that ties into the resolution of these issues? Yeah. This case really started out with Mr. Bihuriak's letter, which he wrote in. Let me back up if I can. He came in on Monday, not because his wife disapproved. He came in on that following Monday with his checkbook in his hand because his neighbor had told him he would pay him more than the $14,000 trade-in allowance. So he wanted to modify the deal, not to get out of buying the Sebring, but he wanted to get the BMW back so he could make more money on the deal. And that was not acceptable to Bill Kay. First of all, it doesn't work that way. They had a contract with him. Second of all, if you take the BMW, the $14,000 out of the deal, take the trade-in out of the deal, then you have to pay taxes on the $14,000. So it's not like they could just give it back to him. They had also agreed to sell the car, not for $16,000, but for $14,500 to a wholesaler in Minnesota. The title was transferred in Minnesota where the signature of only one owner is required, not two. So there was no violation of the Consumer Fraud Act by transferring title to this wholesaler. And the wholesaler just takes, I mean, not that this is real relevant, but if there's a problem, the wholesaler then takes the hit and they could be, you know, in violation of something since you're relying on federal law? No, I don't. I think that the wholesaler – when cars take convertibles, and the BMW is a convertible, when car dealers take trade-ins in the fall of convertibles, they don't – They sold it to a wholesaler who was willing to take it. Before they establish – and I think there's testimony to this effect – before they establish the trade-in allowance, they make sure that they can unload it because this Chrysler dealer doesn't want to have a BMW convertible sitting around its lot until the next spring. So, you know, when the car salesmen disappear for a while and do things, one of the things they're doing is finding somebody who's going to take this car off their hands. And Bill Kaye had dealt with this wholesaler before and knew he would take these types of cars off their hands. So getting back to the issue – Sorry for the diversion. I'm sorry I asked. Did the plaintiffs prove any actual damages? No. Why not? The one – and I think that's where I was going. When Mr. Berhoria – and I probably interrupted myself. When Mr. Berhoria came back and wanted to buy his car back for $14,000 and they wouldn't let him, he wrote a letter and he said – not that he wanted to undo the deal – he said, you misled me as to the value of my trade-in allowance. Which, of course, if you look at the purchase contract, it says that it's a trade-in allowance. It doesn't necessarily reflect the value of it. But we're going to give you $14,000. He wrote a letter saying you misled me. When he hired Mr. Lehr, Mr. Lehr wrote a letter that said the same thing. Neither one of – Mr. Berhoria never said that this was conditioned upon my wife's approval. All he said was, since you misled me, she's not going to come in and sign the title. When Mr. Lehr wrote his letter, he didn't say there was a failure of the condition preceding. He also said that you misled my client as to the value of the trade-in allowance. So the issue, as I understood it, in terms of damages was, if we misled him as to the value of the trade-in allowance, what – misled you as to the value of the trade-in, what was it? Mr. Berhoria attempted to prove that by saying he saw ads in the paper for different cars for higher prices. And Judge Wheaton didn't buy that and found that there was no evidence of any damage. When she did award damages, of course, she – the out-the-door price wasn't the price to Mr. Berhoria. It even included the $2,000 rebate that the manufacturer paid, which then Judge Wheaton ordered the dealer to give back to Mr. Berhoria, even though he didn't even pay that. If I can address some of the things that Mr. Huttle mentioned, in the hearing where the whole case was really decided, the initial hearing on remand on the enforceability of the arbitration agreement, Pamela Berhoria testified that she couldn't have approved of this deal because she spent the weekend as a resident of the Serenity House in Addison. It turned out that that was not true. Go. You can finish a couple of thoughts. Okay. Thank you. Mr. Huttle quoted from Prima Paint, and I think he made my point. He said that the trial court determines whether or not there was an agreement to arbitrate. And that's what the remand was. The quote that he read said that the trial court determines whether or not there's an agreement to arbitrate. And he conceded that Mr. Berhoria did sign this agreement to arbitrate. I think that that should have been the end of the hearing. But if the dealer is aware, and all right, he only signed it, but if the dealer is aware there is a Mrs. Berhoria, and there are, even though this is signed first, the agreement to arbitrate is signed first, and then the contract is signed, and we have the same two parties, the salesperson and Mr. Berhoria, and we know there's a Mrs. Berhoria. Do we just ignore that as it relates to the agreement to arbitrate? Absolutely. And how do we do that? Well, it wasn't an issue that we briefed, but the Illinois Supreme Court has held on more than one occasion that where there's an agreement to arbitrate that's signed by one party but not the other, it gets enforced against the party that signed it. The fact that the other party may proceed in court has absolutely no bearing at all on the enforceability of the arbitration agreement. It wasn't an issue, so I didn't cite the case. Whose name was the vehicle in the Sebring? Mr. Only? Mr. Only. No, Mr. Berhoria. But, yeah, only Mr. Berhoria. Pamela's name was not part of it? No. Although on the reverse side of the purchase contract, it does say that Mr. Berhoria has the full authority to sell, transfer, and deliver it to the dealer. How big is that? Big enough for me to read with my graduated trifocals. The last thing that I wanted to emphasize, once again, and then I'll be beefed off, I guess, is the arbitration agreement. And I know we've covered this. It says, this arbitration agreement shall, with respect to such disputes, survive the termination or expiration of any purchase order or bill of sale. It's a separate document supported by separate consideration. And my client, Bill Kaye, I think, is entitled to the benefit of this bargain. If it wants to do business with people who only sign arbitration agreements, that's its right. And the benefit of this bargain should be enforced, and on remand, an order should be entered compelling arbitration. Thank you. All right, counsel, thank you for your argument. And I would ask both of you one favor. Since the likelihood of seeing you back here in some form is pretty positive, you've both talked about an arbitration agreement. You've both talked about the complaint. You've talked about the contract. They're in the record, but they're not in the brief. They're not in appendix to the brief. And it would have been helpful to this court, since the record is not small, to have that there so that each judge could see it. So in your next appeals, if they are forthcoming, please give us that information if you're going to argue about it. We will. We would appreciate it. And thank you for the opportunity to argue. It's been a long time since one of my cases wasn't decided under Rule 23. Thank you, counsel. We will recess. This case will be taken under advisement.